UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MEDLER ELECTRIC COMPANY,

        Plaintiff,

                                          Case No. 05-10115-BC
v.                                        Honorable David M. Lawson

NILAND COMPANY,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION
## TO DISMISS OR TRANSFER VENUE

The plaintiff, Medler Electric Company, a Michigan Corporation that maintains its business in Alma, Michigan, has filed a complaint seeking to recover payment it made for allegedly nonconforming goods it purchased from the defendant, Niland Company, a Texas corporation. Niland removed this case from a Michigan state court claiming diversity of citizenship and has now filed a motion to dismiss alleging that the Court lacks personal jurisdiction over it. Alternatively, the defendant requests that venue be transferred to the Western District of Texas, where it maintains its principal place of business. The plaintiff filed an answer in opposition to the motion, and the Court heard the parties' arguments in open court on August 10, 2005. The Court finds that it has limited personal jurisdiction over the defendant, venue is properly laid in this district, and there is no need to transfer venue for the convenience of the parties. The defendant's motion, therefore, will be denied.

I.

According to the pleadings and motion papers, Niland's principal office is located in El Paso, Texas. The corporation is not registered in Michigan and has no offices, employees, or property in

Michigan. In June of 2003, the defendant submitted a bid to the plaintiff proposing to sell light-pole assemblies for a project in Michigan. The plaintiff contracted with the defendant on or before December 31, 2003 to purchase street light assemblies, which including poles, banner arms, and fixtures, in order to perform its own contract to install street lights for the City of Utica, Michigan.

Prior to shipment of the light-pole assemblies, the defendant informed the plaintiff it could not provide the specific assemblies as agreed. The contract specifications called for banner arms that screwed onto the light poles, but the defendant could only provide arms that strapped onto the light poles. The plaintiff gave provisional approval for the nonconforming goods to avoid installation delay. The purchase order confirmed the sale of the goods F.O.B. at the defendant's factory in Texas. A common carrier shipped the goods from Texas to Michigan. The parties agree that title to the goods transferred to the plaintiff when the carrier picked up the goods from the defendant's factory. The plaintiff received the goods in late October or early November 2003. The defendant contends that it sent no representatives to meet with the plaintiff or assist in installation.

After installation began in December 2003, the plaintiff contends that it discovered that the light-pole assemblies had paint defects. The plaintiff continued with installation after the defendant allegedly agreed to replace the defective lamp assemblies with items that conformed to the original contract. Instead, the defendant delivered the same nonconforming-style light poles, which the plaintiff rejected. The defendant offered to retro-fit the poles with a screw-on banner arm at a price of $350 per pole. In response, the plaintiff tendered to the defendant the nonconforming street lamp assemblies and demanded a refund. The plaintiff subsequently purchased poles from another supplier. The defendant has refused to refund the plaintiff's costs.

On March 3, 2005, the plaintiff filed a complaint in Gratiot County, Michigan circuit court alleging breach of contract and various warranties. The defendant then filed a notice of removal and the present motion to dismiss or transfer the case. The defendant argues that the Court lacks personal jurisdiction because it conducted no business in Michigan and the litigation in Michigan is impractical and unfair.

## II.

The defendant first contends that the Court lacks personal jurisdiction over it because it is not located in Michigan and it entered a contract to provide materials to the plaintiff in Texas, not Michigan, since under the shipping terms title transferred to the plaintiff when the common carrier picked up the goods in Texas.

In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Because this Court is relying only on the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing of jurisdiction." *Ibid.* In the absence of an evidentiary hearing, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Ibid.* The Court views the facts in the light most favorable to the nonmoving party. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

"In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." *Bagsby v. Gehres*, 195 F. Supp. 2d 957, 961 (E.D. Mich. 2002) (citing *Neogen Corp.*, 282 F.3d at 888). In Michigan, jurisdiction over the person can exist on the basis of general personal jurisdiction, *see*

Mich. Comp. Laws §§ 600.701 and 600.711, or limited personal jurisdiction, *see* Mich. Comp. Laws §§ 600.705 and 600.715. General personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction, or engages in continuous and systematic business in Michigan. Mich. Comp. Laws § 600.711. Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum, but only over claims that arise from or relate to those contacts. *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991). However, even a single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998); *see McGill Technology Ltd. v. Gourmet Technologies, Inc.*, 300 F. Supp. 2d 501, 505 (E.D. Mich. 2004) (holding that personal jurisdiction can arise from contacts that are "contacts are isolated and sporadic").

The plaintiff does not contend that Niland is subject to general personal jurisdiction in Michigan. However, Michigan's "long-arm statute" contains a list of activities that will subject a corporation to the exercise of limited personal jurisdiction by Michigan courts. It includes transacting "any" business within the state, doing an act or causing consequences to occur in Michigan, owing or using tangible personal property in the state, insuring a risk within the state, and entering into a contract for services or materials within the state. Mich. Comp. Laws. § 600.715. Once the provisions of the long-arm statute are deemed satisfied, the Court then decides whether an assertion of jurisdiction over the defendant would comport with the notions of fundamental fairness required by the Due Process Clause. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

In Michigan, it is necessary to analyze separately the question of limited personal jurisdiction under the state's long-arm statute and under the Due Process Clause. Although it has been suggested

that Michigan's long-arm statute is coextensive with the Due Process Clause and that there accordingly is no reason to conduct a two-part inquiry, *see Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992), the Court notes that the Sixth Circuit's prediction on this point has since been proven incorrect.  Since *Griepentrog* was issued, the Michigan Supreme Court has clarified that its statute does *not* automatically extend to the limits of the Due Process Clause.  *Green v. Wilson*, 455 Mich. 342, 350-51, 565 N.W.2d 813, 816-17 (1997).

A.

As to the application of Michigan's long-arm statute, the question of whether Niland has conducted "any" business in Michigan is not difficult to answer.  The defendant's business dealings in Michigan need not have been extensive or prolonged, since the Michigan statute allows "any" business dealings to suffice, and "any" includes even the slightest amount.  *See Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 624 n.2 (1971).  The Michigan Court of Appeals has broadly defined the concept of transacting business:

> The phrase "transaction of any business" is not defined in the statute.  Therefore, it is proper to rely on dictionary definitions in determining the meaning of that provision.  *Popma v. Auto Club Ins. Ass'n,* 446 Mich. 460, 470, 521 N.W.2d 831 (1994).  "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997).  "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit."

*Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424, 430, 633 N.W.2d 408, 413 (2001) (holding that extensive marketing efforts directed toward Michigan consumers satisfied Mich. Comp. Laws § 600.715(1)).

Niland responded to a bid and agreed to sell its products to a Michigan customer. According to the affidavit of Kelly Vliet, the plaintiff's vice-president, Niland worked through a manufacturer's representative that was a Michigan corporation. There were extensive telephone calls, facsimile messages, and electronic communications with the plaintiff in Michigan during the fulfillment of the contract. The Court is satisfied that the defendant's activities constitute the transaction of business in this state within the meaning of Mich. Comp. Laws § 600.715(1). "Neither the presence of the defendant in the state, nor actual contract formation need take place in the forum state for the defendant to do business in that state." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 907 (6th Cir. 1988). As the Supreme Court observed in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." A defendant who is not physically present in a state may conduct business there, and the Court finds that Niland's commercial dealings with Medler satisfy the first component of Mich. Comp. Laws § 600.715(1).

The defendant places great weight on the fact that the goods were delivered F.O.B. at its Texas factory. However, "F.O.B. shipping terms are not dispositive of whether the defendant entered into a contract for materials to be furnished in Michigan." *Starbrite Distributing, Inc. v. Excelda Mfg. Co.*, 454 Mich. 302, 304, 562 N.W.2d 640 (1997). In *Starbrite*, the court stated that "[t]he statutory language 'furnishing' is broader than 'delivery,' and in this case, [the out-of-state defendant] entered into a contract for materials to be furnished in Michigan." *Ibid.* Similarly, there is no question that the contract was to be performed in Michigan, the ultimate destination for the defendant's products.

As noted above, however, the plaintiff's cause of action must also arise from the business transacted in the forum. The court of appeals addressed this component of the test in *Lanier*, 843 F.2d at 908-09. There, a female plaintiff sued the Illinois-based American Board of Endodontics alleging that she was denied a license by the Board on the basis of gender. The Board filed a motion to dismiss, arguing that it had insufficient minimum contacts with the State of Michigan. The court of appeals disagreed. First, the court found that the Board had transacted business within Michigan by exchanging correspondence and telephone calls with the plaintiff, in addition to collecting her application fee. Second, the court found that the plaintiff's cause of action arose out of those business transactions. Two possible theories defining the "arising from" requirement were considered: One was whether the business transactions "made possible" the cause of action, and the other was whether the cause of action arose in the "wake" of the business transactions. Under either theory, the court held, the discrimination was made possible and occurred in the wake of the plaintiff's filing her application, which the court previously had found to constitute the transaction of business in Michigan by the Board. *Id.* at 908.

The Court finds that the plaintiff's claim arises primarily from the performance of the contract. The alleged failure to furnish conforming goods or refund the purchase price for the returned goods occurred "in the wake of" the transactions involving the sale of the goods, that is, the contract that was formed through the contacts with the forum state. The Court finds, therefore, that both components of Mich. Comp. Laws § 600.715(1) have been satisfied.

B.

The Court evaluates compliance with the Due Process Clause under the following test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

>must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen*, 282 F.3d at 890 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

"Purposeful availment" occurs when "the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.'" *Ibid.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Ibid.*

Here, the defendant purposely availed itself the privilege of doing business in Michigan by bidding on the contract, negotiating its terms, and taking responsibility for the products used in Michigan by replacing the originally sent lights.  The defendant apparently knew that it was conducting business with a Michigan corporation to provide goods to be  installed in Michigan.

A cause of action arises from purposeful availment if the cause of action would not exist but for the contacts cited.  *See Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991); *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 456 (6th Cir. 1993).  "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract."  *S. Mach. Co.*, 401 F.2d at 384 n.29.

The cause of action in this case arose from the furnishing of allegedly non-conforming goods and not providing suitable replacements.  As discussed earlier, the cause of action arises from the defendant's "purposeful availment" of the privilege of engaging in commerce in this state.  The

Court determines, therefore, that the plaintiff has established the second prong of the *Southern Machine* test.

The reasonableness of asserting jurisdiction is assessed by considering "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest in other states in securing the most efficient resolution of controversies." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). Considering the defendant's purposeful conduct of business with the plaintiff in Michigan, the exercise of personal jurisdiction over the defendant is reasonable. As the Supreme Court observed, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

### III.

The defendant also contends that venue is not properly laid in this district because it is not located here and the events giving rise to the claim did not occur in Michigan. The plaintiff argues that a substantial portion of the events giving rise to the action took place in Michigan because negotiations occurring by mail, e-mail, facsimile, and telephone were directed to Michigan.

Although the purpose of the venue rules is to protect a defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial, *see LeRoy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979), the proper venue for a civil action is governed by statute. In civil cases "wherein jurisdiction is founded solely on diversity of citizenship," venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to

> personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). "Under § 1391(a)(2), . . . the appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998). Section 1391 further contains a specific subsection dealing with the propriety of venue when corporations are parties to a dispute:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c).

In this case, venue is proper under both sections 1391(a)(1) and (c). This Court has personal jurisdiction over the defendant, so the defendant corporation is considered to reside in the Eastern District of Michigan for the purpose of venue. *See* 28 U.S.C. § 1391(a)(1) and (c). In addition, a "substantial part of the events or omissions giving rise to the claim occurred" in Michigan. *See* 28 U.S.C. § 1391(a)(2). The defendant sent a bid on the contract to the plaintiff in Michigan, negotiated the terms of the contract by directing communications to Michigan, caused the goods to be sent to Michigan, and took responsibility for the products used in Michigan by replacing the originally sent lights.

The Court concludes that venue is properly laid in this district.

IV.

Finally, the defendant has submitted the affidavit of its president containing his testimony that Niland Company has no presence in Michigan. It contends that the Court should transfer the case to the Western District of Texas, El Paso Division for the convenience of the parties because Niland has its principal place of business in El Paso and officers of the company residing in Texas will be witnesses.

Under 42 U.S.C. § 1404(a), a district court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." However, the moving party must show that both practicality and fairness militate in favor of the alternate venue. *Thomas v. Home Depot USA, Inc.,* 131 F. Supp. 2d. 934, 936 (E.D. Mich. 2001). Courts may consider any factor that "may make any eventual trial easy, expeditious, and inexpensive" in deciding whether to grant transfer, although common factors considered include:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of processes to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) (citations and quotations omitted). Generally, courts grant substantial deference to the plaintiff's choice of forum. *Steelcase, Inc. v. Mar-Mol Co.,* 210 F. Supp. 2d. 920, 938 (W.D. Mich. 2002).

The Court has evaluated the factors quoted above and concludes that the balance of inconvenience is equally struck in this case. Both the plaintiff and the defendant have personnel that would testify as witnesses in this case. The parties each would be inconvenienced in the same way

by having to marshal their respective personnel and bring their proof to another state. The balance may tip to the plaintiff if becomes necessary to demonstrate how the local municipal project was affected by the nonconforming goods. Nonetheless, transfer is not appropriate because it would only serve to "shift the inconvenience from one party to another." *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F. Supp. 2d 734, 751 (E.D. Mich. 2004) (quoting *Evans Tempcon, Inc. v. Index Industries, Inc.*, 778 F. Supp. 371, 377-78 (W.D. Mich. 1990)).

V.

For the reasons stated, it is **ORDERED** that the defendant's motion to dismiss or transfer venue [dkt # 3] is **DENIED**.

    s/David M. Lawson
    DAVID M. LAWSON
    United States District Judge

Dated: August 12, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 12, 2005.

    s/Tracy A. Jacobs
    TRACY A. JACOBS